UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:00CV01915-ERW |
| ) | |
| BAYER CROPSCIENCE, N.V., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Monsanto Company's ("Plaintiff" or "Monsanto") Motion for Determination of Exceptional Case under 35 U.S.C. § 285 and Award of Attorneys' Fees [doc. #898], and for an award of costs [doc. #895].

## I. PROCEDURAL HISTORY

Monsanto filed suit against Bayer Cropscience, N.V. ("Bayer" or "Defendant") seeking a declaration from this Court that its Mon810 YieldGard® corn ("Mon810 Corn") products do not infringe the claims of four United States patents owned by Bayer. Bayer then filed a counterclaim against Monsanto for patent infringement. This Court initially granted Summary Judgment in favor of Monsanto, on the basis that the patents in question were unenforceable due to Bayer's inequitable conduct before the Patent and Trademark Office ("PTO"). The Court also found that the collateral estoppel effect of a prior decision on a similar patent required this Court to hold that all of the asserted claims of the '546 patent and two of the claims of the '372 patent were invalid and that Monsanto did not infringe any of the asserted claims of the '799 patent. Lastly, the Court held that Monsanto was entitled to summary judgment of non-infringement as to all of the

1

asserted claims of the '565 patent and one of the asserted claims of the '372 patent based on the construction of the claim term Bt2 toxin. These holdings were overruled by the Federal Circuit. *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235 (Fed.Cir. 2004). Specifically, the Federal Circuit held that there was a material issue of fact regarding whether there was inequitable conduct by Bayer during the prosecution of its patent application, based on an affidavit, submitted to this Court by Mr. Jansens, explaining the declaration submitted to the PTO which was the basis of this Court's finding of inequitable conduct. The Federal Circuit further held that although the questions in this case were similar to the earlier case of *Plant Genetic Systems N.V. v. Dekalb Gentics Corp.*, 175 F.Supp.2d 246 (D.Conn. 2001)[1], they were not identical and therefore collateral estoppel was inappropriate; collateral estoppel effect would be appropriate only if Monsanto was successful in showing by clear and convincing evidence that the specifications of the '546 and '372 patents do not teach one of ordinary skill how to transform a monocot with a gene for a Bt toxin, which Monsanto had not done prior to Summary Judgment. Lastly, the Federal Circuit held that this Court's claim construction of the term "Bt2 toxin" was incorrect, because the Court based its construction on the source of the toxin, rather than the amino acid sequence of the toxin. For the above cited reasons the Federal Circuit reversed this Court's summary judgment order and remanded the case to this Court for further proceedings.

On remand, Bayer dismissed its counterclaims of infringement of the '799, '372, and '546 patents, leaving only infringement of the '565 patent to be tried on remand. However, Monsanto's original action for declaratory judgment regarding validity remained as to all patents. Subsequently, Bayer sought and received summary judgment from this Court that the

---

[1]This was the case this Court relied on in finding that Defendant Bayer was collaterally estopped from raising certain arguments before this Court.

circumstances of the Jansens' declaration could not impact the '565 patent based on infectious unenforceability. A jury returned a verdict on November 22, 2005, finding that Monsanto's Mon810 Corn did not infringe the Bayer patent, that the claims of the '565 patent were invalid because of prior inventorship, and the '565 patent was invalid for obviousness in view of prior art. This Court then held an inequitable conduct hearing on February 21, 2006 which continued through February 24, 2006. The Court found that all four patents were invalid due to inequitable conduct. There was a great deal of testimony provided to the Court, which is thoroughly articulated in this Court's prior order, that supports this Court's finding of inequitable conduct. Bayer failed to provide the PTO with test results that were negative for any insecticidal activity, in a number of different plants. *See* Docket No. 894 at p. 6. Specifically, Mr Jansens, who submitted a declaration which was filed with the PTO, knew of the negative test results, evidenced by a meeting he attended where the negative results were reported. *Id.* This Court further held that the information withheld was material. Following this Court's ruling of inequitable conduct by Bayer, Plaintiff Monsanto filed the pending motions for costs and for attorneys' fees.

## II. FACTUAL BACKGROUND

Monsanto filed suit against Bayer seeking a declaration from this Court that their Mon810 Corn did not infringe any of Bayer's patents. Monsanto based its suit on the argument that the patents were invalid due to Bayer's inequitable conduct. The four patents involved in this litigation are U.S. Patents No. 5,545,565 ("the '565 patent"), No. 6,767,372 ("the '372 patent"), No. 6,107,546 ("the '546 patent"), and No. 5,254,799 ("the '799 patent"). All four patents were based on an invention that took advantage of a known system for introducing foreign DNA into a plant cell's genome by using the bacterium Agrobacterium tumefaciens ("Agrobacterium"), which

has the ability to transform the genome of certain plants.  The Agrobacterium is then transformed so that its genome contains a chimeric gene comprising a DNA fragment that encodes a truncated form of the Bt insecticidal protein.  The purpose of this process is to develop plants, especially crops, which contain insecticidal levels of the Bt toxin, so that they will be resistant to insecticides.  Monsanto developed, and sells, genetically altered corn seeds that produce corn which expresses a Bt toxin at insecticidal levels.  The present suit was initiated by Monsanto.  Bayer then counter-claimed against Monsanto for infringement.

## III.  BILL OF COSTS[2]

Monsanto has filed a motion for costs, in accordance with Federal Rule of Civil Procedure 54(d).  Rule 54(d) provides that "[e]xcept when express provision therefore is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs. . .."  Fed. R. Civ. P. 54(d).  28 U.S.C § 1920 provides what items may be taxed as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any party of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

---

[2]The Court notes that certain costs were included by Plaintiff in both its request for Bill of Costs, and in its Motion for Attorney's Fees and Expenses under 35 U.S.C. § 285.  Plaintiff clearly points out that it is not seeking a double recovery, but rather that such costs could be awarded under either statute.  Any award that this Court makes under 28 U.S.C. § 1920 that are also requested under 35 U.S.C. § 285, will be subtracted where appropriate.

4

28 U.S.C. § 1920. Following this Court's Summary Judgment ruling, prior to the Federal Circuit remanding the case, this Court entered an award of costs in favor of Plaintiffs in the amount of $108,954.32. The Court allowed all requested costs with the exception of $27,428.28 for "luxury items" related to court reporting costs. Following appeal, and subsequent success at trial on remand, the Plaintiffs now seek an award of $138,880.46 for costs. Plaintiffs note that the request for costs was adjusted in accordance with this Court's prior order, reducing it for the luxury items noted above, with the exception of videotaping costs.[3] The only additional costs asserted by Plaintiffs is for original trial transcripts, however, they have omitted any costs for Realtime or ASCII costs which were previously disallowed by this Court.

The only objection Bayer asserts to Plaintiffs' Bill of Costs is to those costs associated with videotape depositions. In this Court's prior ruling the Court held that although most court's have allowed the recovery of costs associated with videotape depositions, such a recovery was not appropriate in this case because Plaintiffs failed to articulate why videotapes and transcripts were "necessarily obtained for use in the case." Docket No. 413, November 14, 2003, p. 8 (citing 28 U.S.C. § 1920). In Plaintiffs' current motion for costs, they repeat this request and articulate that such videotapes were necessary to aid both the jury and the Court in independently assessing the demeanor and credibility of each witness.

As the only disputed issue is over the cost of videotape depositions, this will be the focus of the Court's discussion. As was stated by this Court in its previous order, "section 1920(2) implicitly permits taxation of the costs of video depositions." *Cherry v. Champion International Corp.*, 186 F.3d 442, 448 (4th Cir. 1999); *see also Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d

---

[3]*Pl. Memo in Support of Pl. Mot. For Bill of Costs*, 1 ("Monsanto has removed all costs associated with rough transcripts, Realtime costs, ASCII deposition costs, condensed transcripts, and delivery and shipping charges.").

5

1471, 1477 (10th Cir. 1997); *Morrison v. Reichold Chemicals, Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996). The Circuit Court opinions cited have reasoned that although 28 U.S.C. § 1920 doesn't explicitly provide for costs from videotape depositions, they are implicitly permitted when this statute is read in conjunction with Federal Rule of Civil Procedure 30(b)(2)-(3). *Tilton*, 115 F.3d at 1477 ("Interpreting section 1920(2) in conjunction with Rule 30(b)(2)-(3) implicitly permits taxation of the costs of video depositions."). Rule 30(b)(2) provides that "[t]he party taking the deposition shall state in the notice the method by which the testimony shall be recorded. Unless the court orders otherwise, it may be recorded by sound, sound-and-visual, or stenographic means. . .." The Court ruled "that although the costs of video depositions may be recoverable, a prevailing party is not necessarily entitled to recover the costs of both transcribing and videotaping the deposition." Docket No. 413, November 14, 2003, p. 8.

The Court concluded in its November 14, 2003 order that the Plaintiff, as the prevailing party, had not made an adequate showing of necessity to recover costs for both. However, the Court does not believe the same result necessarily follows today. One of the basis for this Court's previous order was the Plaintiff's failure to make a showing of why the video depositions were required. Docket No. 413, November 14, 2003, p. 8. The Tenth Circuit discussed the wisdom of allowing such recovery; "Videotaped depositions are a necessary and time effective method of preserving witnesses' time and allocating precious court and judicial time in this age of advanced court technology and over-crowded court calenders." *Tilton*, 115 F.3d at 1477 (internal citation omitted). The court held in that case that "the district court did not abuse its discretion in taxing the costs of both the preparation and transcription of the seven videotaped depositions." *Id.* at 1478. Plaintiff has provided sufficient reason for requiring the videotaping of the depositions as well as their transcription, and therefore the costs will be charged to Defendant. Specifically, now

6

there is a sufficient showing that it was beneficial to this Court in making its determinations of credibility of both Plaintiff and Defendant witnesses to have a videotape representation. As was evident from the opinion entered in this case, the question of credibility played a large role in this case, and therefore the Court concludes such costs are reasonably recoverable.

## IV. ATTORNEY'S FEES AND EXCEPTIONAL CASE DETERMINATION

### A. LEGAL STANDARD

United States Patent law provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In making this decision the Court will look at Federal Circuit case law, as this is an issue unique to patent law. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed.Cir. 2001) ("[T]he awarding of attorney fees pursuant to 35 U.S.C. § 285 is an issue unique to patent law and therefore subject to Federal Circuit law."). As is true under any fee-shifting statute, such statute is to be construed narrowly, as it is contrary to the American Rule that parties should pay their own litigation expenses, including attorney's fees. *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 471 (Fed.Cir. 1985) ("Under the 'American Rule,' the prevailing litigant is ordinarily not entitled to any attorney fees, absent statutory authority."). Furthermore, "it is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits. . . ." *Id.* at 472.

In order for a district court to award attorney's fees, the court must undertake a two-step inquiry. *Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1315 (Fed.Cir. 2005). "The court examines first whether there is clear and convincing evidence that the case is exceptional, and second whether an award of attorney fees to the prevailing party is warranted." *Id.* As cited by this Court in its order finding inequitable conduct by Bayer, "inventors, patent owners, and attorneys associated with the filing or prosecution of a patent application have an

7

affirmative and continuing duty to disclose material information to the PTO." *Id.* Specifically, the Federal Circuit stated that "[t]he prevailing party must prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified and otherwise bad faith litigation; a frivolous suit or willful infringement." *Brasseler, U.S.A., L.P. v. Stryker Sales Corp.*, 296 F.3d 1370, 1380 (Fed.Cir.2001). The *Bresseler* court further stated that "exceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent." *Id; see also Cambridge Products Ltd. v. Penn Nutrients Inc.*, 962 F.2d 1048, 1050-51 (Fed.Cir. 1992) ("In the case of awards to prevailing accused infringers. . ., 'exceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent.").

The Federal Circuit requires that the district court find by clear and convincing evidence that a case is exceptional. *Id.* at 1378-79 ("Direct or circumstantial evidence that is clear and convincing is needed to establish an exceptional case." (internal quotation omitted)). Furthermore, even if the district court makes a determination that the case is exceptional, it is within the discretion of the court to award attorney's fees. *Consolidated Aluminum Corp. V. Foseco International Ltd.*, 910 F.2d 804, 815 (Fed.Cir.1990). Specifically the Federal Circuit stated that "not every case deemed exceptional must result in a fee award." *Id.* "The requirement in Section 285 of establishing an 'exceptional case' remains a formidable and adequate barrier to unwarranted awards." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed.Cir. 1988).

### B. DISCUSSION

Plaintiffs assert two of the bases articulated by the *Brasseler* court in support of their assertion that this is an exceptional case. 267 F.3d at 1380. First, Plaintiffs argue that the finding of inequitable conduct based on the false declaration by Mr. Jansens in regard to the '799, '372,

8

and '546 patents, and Dr. Meulemans's false testimony regarding the '565 patent, are sufficient to support this Court's finding of an exceptional case. Secondly, Monsanto argues that Bayer's counter-claims regarding the three patent claims that were ultimately dropped, '799, '372, and '546, were based upon a theory that Bayer knew to be factually baseless, thus constituting bad faith litigation. For the following reasons, this Court agrees with Plaintiffs' first argument, that this is an exceptional case, and that an award of attorneys' fees is appropriate; it is therefore unnecessary to address the bad faith argument.

### 1. Exceptional Case

Although Defendants correctly assert that this Court is not required to make a finding of an exceptional case based solely on the fact that this Court found inequitable conduct, the level of inequitable conduct that was found by this Court is clearly sufficient to support such a finding. This Court stated that

> [t]he orchestration of deceit, of purposeful misrepresentation of material fact, of intentional non-disclosure of material information, and submission of false material information, with intent to deceive and mislead the United States Patent Office Examiner has been proved by clear and convincing evidence. The weighing of equities of the parties clearly and convincingly warrants a conclusion that Bayer and its antecedent companies committed inequitable conduct. . ..

Docket No. 894, p. 91. Contrary to Defendants assertion that the determination of inequitable conduct was a close one, this case shows an extreme company policy of doing whatever was necessary to get the broadest, and most lucrative, patent protection. The award of attorney's fees under 35 U.S.C. § 284 is intended as a deterrent to "the improper bringing of clearly unwarranted suits on obviously invalid or unenforceable patents. . .." *Mathis*, 857 F.2d at 754.

Furthermore, those cases cited by Defendants in support of their argument that this was a close case, address the bad faith conduct of a party in patent litigation, which is distinguishable from the case at bar. *See e.g. Phonometrics, Inc. v. Choice Hotels International, Inc.*, 186

9

F.Supp.2d 1231, 1232 (S.D.Fl. 2002) ("When a party makes a colorable, albeit weak, argument that was not raised in bad faith, the court should not grant attorneys [sic] fees. . .. Conversely, when a claim is clearly hopeless and unquestionably without any possible basis in fact or law, the court has discretion to award attorneys' fees." (Internal quotation omitted)). The basis for this Court's exceptional case finding is the Defendant's inequitable conduct before the PTO, not its bad faith in litigating before this Court. This is supported by the language in this Court's August 8, 2006 order, which stated:

> In any ruling or reference made herein, it must be clearly understood, that attorneys for both parties, who have borne substantial burdens in complying with the Court's orders, have made an enduring impression by always observing the highest tenets of professionalism, and they have displayed mutual respect for their worthy adversaries and for the Court. Any findings of inequitable conduct or actionable conduct of any kind is ascribed to no lawyers in the jury trial or in this equitable proceeding. All have recognized the bounds of effective advocacy and have practiced their very substantial skills in representing their clients in the most appropriate manner.

Docket No. 894, p. 89. Defendants point to this statement in support of their argument that a ruling that this is an exceptional case warranting an award of attorney's fees is inappropriate. While it is true that an exceptional case finding can be based on the bad faith actions of attorneys, *See Evident Corp.*, 399 F.3d at 1315, it is not an essential element. The simple fact that the attorneys in this case acted with respect towards each other and the Court, is not sufficient to prevent an award of attorney's fees. The Federal Circuit, in *Evident Corp.*, also stated that an exceptional case finding may be based on the actions of the patent holder, which is what took place in the case at bar. *Id.* This Court finds that the actions by Bayer, and its employees, were done with a disregard for the truth, and therefore warrant a finding of an exceptional case.

### 2. Attorneys' Fees and Expenses

Once a determination of an exceptional case has been found, the second part of the inquiry is whether this Court will exercise its discretion in awarding attorney's fees and costs. "After the district court determines the case is exceptional, there remains in every case its freedom to exercise its discretion 'informed by the court's familiarity with the matter in litigation and the interest of justice'" to award attorney's fees. *Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed.Cir. 1987) (quoting *S.C. Johnson & Son, Inc. v Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed.Cir. 1986)); *see also Perricone v. Medics pharmaceutical Corp.*, 432 F.3d 1368, 1380-81 (Fed.Cir. 2005). In accordance with the determination made by this Court after it's first summary judgment ruling, before remand, this Court finds that an award of attorney's fees is appropriate. Plaintiffs have spent a large amount of time and money in defending against the counterclaims asserted by Bayer and in prosecuting their action for a declaratory judgment, all of which was necessitated by the bad faith of Defendants in seeking a patent that was overly broad, and which was granted due to misinformation provided to the PTO. The exceptional circumstances requirement strikes a balance between the interest of the patentee in protecting his statutory rights and the interest of the public in confining such rights to their legal limits." *National Diamond Syndicate, Inc. v. Flanders Diamond U.S.A., Inc.*, 2003 WL 21663673, *6 (N.D. Ill. July, 15 2003); *see also eSpeed, Inc. v. Brokertec U.S.A., L.L.C.*, 417 F.Supp.2d 580, 600 (D.Del. 2006) ("To determine whether attorneys' fees are warranted, a trial judge should weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." (Internal citation omitted)). The balance in this case clearly warrants an award of attorneys' fees in favor of Plaintiffs. Although Defendants are correct that the Federal Circuit remanded this Court's summary judgment ruling on the question

of inequitable conduct, this alone does not provide a basis for Defendants argument that this was a close case. Defendants' responsive brief is an attempt to reargue the question of inequitable conduct, however, this was conclusively decided by the Court in its earlier opinion. Defendants further argument regarding bad faith litigation are inapplicable, as stated by the Court earlier, the determination that this is an exceptional case is based not on Bayer's bad faith in litigating the present action, but on its bad faith before the PTO.

In its prior ruling, this Court authorized an award of $4,616,202.00[4] for attorneys' fees, and $72,827.89 in additional costs and expenses. Monsanto now seeks $9,060,923.99 in attorneys' fees and costs. Defendants raise a number of arguments disputing this amount. First, Defendants argue that there are mathematical errors in Monsanto's calculation of fees. Secondly, Defendants argue that the lodestar analysis mandates a different result, as the number of hours, and the hourly rate are both unreasonable. Thirdly, Defendants argue that an award of attorneys' fees should only be permitted for those costs associated with the conduct found to be inequitable, not for all of Monsanto's fees. Fourthly, Defendants assert that Plaintiffs expenses are unreasonable, and are not limited to those permitted by this Court in its prior exceptional case ruling. Fifthly, Defendants argue that certain items are included as 35 U.S.C. § 285 expenses as well as under the Bill of Costs, and should be limited to one or the other. Lastly, Defendants argue that 35 U.S.C. § 285 does not authorize reimbursement of expert witness fees. The Court

---

[4]This was split between the Howrey, White law firm ($4,313,437.00) and Husch & Eppenberger, L.L.C. ($302,764.50). The Court notes a difference of $.50, however, due to the immaterial nature of the discrepancy, the total attorney fee awarded before appeal and remand is approved as it was in the prior ruling.

will address each of Defendants arguments in turn, and will carefully review all of the expenses and fees Monsanto seeks to have paid by the Defendants.[5]

### a. Attorneys' Fees

The first argument is that their was a mathematical error in Monsanto's calculation of attorney's fees. Specifically, that the records provided by Monsanto show only $8,308,348.00 not $8,545,677.50 that Monsanto claims. Monsanto responded by stating that a billing receipt had been omitted which accounted for the difference, but that Monsanto would not be opposed to a reduction for failing to supply sufficient documentation. Accordingly, the Court will use the starting amount of $8,308,348.00, for attorneys' fees.

The second argument addresses the lodestar amount. The Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Supreme Court also stated that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. . . .. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 434 (internal citation omitted) (emphasis in original). The Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, listed twelve factors which are commonly cited for determining a

---

[5]Monsanto argues, in its reply memorandum, that the declaration of Mr. Gary Greenfield (the Greenfield Declaration), submitted by Defendants, is inadmissible as it fails to meet the requirements of Federal Rule of Evidence 702. This Court will look at the Greenfield Declaration, along with all other relevant evidence in reaching a determination of the appropriate attorney fee award.

reasonably attorney fee award. 488 F.2d 714 (5th Cir. 1974).[6] However, as noted by the Supreme Court in *Hensley*, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. 461 U.S. at 434 n.9.

Both parties rely upon the American Intellectual Property Law Association's (AIPLA) survey, which reports the average hourly rates, and total billing amounts for a variety of patent law cases, in a variety of regions. Plaintiffs assert that the average cost for litigating a patent infringement cases, where over $25 million in damages are sought, is $5,175,753.00 with mean amounts varying between $3.2 million and $9.4 million depending on region. Plaintiff further asserts that due to the complexity of the case, the requirement of not only a jury trial but also a four day inequitable conduct hearing, and the significant amount of damages at stake, the higher end of these averages is appropriate. Defendants more specifically look to the mean hourly rate billed and the mean litigation expenses specifically for the Midwest region of the country and argue the amount should be lower. The Court has reviewed the AIPLA guidelines, which are helpful in determining a reasonable fee, and notes that Plaintiffs' requested fees are within the averages cited for a case of this type, although it is high for a case in the Midwest. However, the Court is not inclined to reduce the requested amount based solely on the averages quoted in that report. Each case has its own set of facts and its own intricacies; as Plaintiffs correctly point out this case was particularly complicated. The amount sought by the Plaintiffs is not beyond the realm of acceptable according to AIPLA.

---

[6]The factors enumerated by the Fifth Circuit are: 1) the time and labor required, 2) the novelty and difficulty of the questions, 3) the skill requisite to perform the legal service properly, 4) the preclusion of other employment by the attorney due to acceptance of the case, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or the circumstances, 8) the amount involved and the results obtained, 9) the experience, reputation, and ability of the attorneys, 10) the undesirability of the case, 11) the nature and length of the professional relationship with the client, and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

Although the requested fees are within the guidelines cited, Defendants raise a number of legitimate questions regarding the billing records. The Court will look at each assertion and adjust the total fee award accordingly.[7] The first issue is the costs incurred between this Court's original order in this case, and the second trial[8] that was held. Defendants assert that the $2,204,271.53 in attorneys' fees billed between the time the case was remanded, and the time of the second trial, were unnecessary, because Plaintiffs already billed for these expenses prior to the summary judgment being granted. Plaintiffs respond that it is unreasonable to argue that no work should have been conducted between this Court's December 28, 2002 entry of Summary Judgment, and jury selection which began on October 31, 2005. Monsanto gives a detailed list of all the expenses incurred during that period. This Court believes all those expenses are reasonable, with the exception of the $63,055.65 incurred for the ultimately unsuccessful infectious unenforceability argument relating to the '565 patent. These fees are not reasonably placed on the Defendant, the remainder of the $2,204,271.53 is recoverable.

Defendants next seek to reduce the attorneys' fee award by $609,750.92 for problems with billing practices, and by $986,125.11 for reduction in the hourly rates used. Having reviewed the declarations by attorneys for both Husch & Eppenburger, L.L.C., and Howery L.L.P., this Court does not believe that either law firm was in the practice of over billing its clients.[9] Furthermore, this was an extremely complex case, which undoubtedly took a great deal

---

[7]For ease in analyzing the information, the Court will go through the "Summary of Analysis" included in the Greenfield Declaration, and where other information is drawn upon, the Court will note accordingly.

[8]The Court notes that there was no first trial in this case. However, the term is used to distinguish from billing that was submitted in preparation for the first trial, before Summary Judgment was entered.

[9]All fees were billed to the client, which the Supreme Court noted in *Hensley*, is a factor in whether such fees are reasonably billed to the opposing party. 461 U.S. at 434.

of attorneys a great deal of time in preparing to go to trial. Therefore the reductions in rates and time billed sought by the Defendants will not be made.

The last significant dispute raised by Defendants regarding the fees billed, is for those entries that are partially redacted. No request for fees was made for those entries that were completely redacted, but a request for fees was made for entries that were only partially redacted. Having reviewed the partially redacted entries, they are not so vague as to prevent this Court from reviewing the reasonableness of the hours billed. Although some detail has been removed, the activities listed do not appear unreasonable, and the recovery of these fees will be permitted.

Bayer's third argument asserts that any attorneys' fees awarded should be limited to those relating to the inequitable conduct finding. The Supreme Court in *Hensley*, stated that "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." 461 U.S. at 435 (internal citation omitted). Defendants' arguments on this issue are unpersuasive. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* It is clear in the case at bar that although this Court mistakenly ruled in favor of Plaintiffs on Summary Judgment, this does not change the ultimate success of the Plaintiffs at trial and in the inequitable conduct hearing. Furthermore, Plaintiffs were obligated to defend those claims asserted by the Defendants, even those that were eventually dropped from the action. Defendants cite to *Beckman Instruments, Inc. V. LKB Produkter AB*, however, that case is not helpful to the Defendants position. 892 F.2d 1547 (Fed.Cir. 1989). The court found that the district court was incorrect in awarding all attorney's fees, as not all expenses incurred by the prevailing party were a result of the vexatious litigation strategy. *Id.* at 1553. However, the court further stated that "this case differs from cases in which willful infringement on the part of an infringer or inequitable conduct on the part of a patentee *led* to the bringing of the lawsuit."

*Id.* (emphasis in original). That is the exact situation that is present in the case at bar. The inequitable conduct of Defendants, led the PTO to issue a patent that was overly broad, and which then required a lawsuit by Monsanto to prevent an action for infringement, and the potential for serious economic harm resulting from the loss of sales of its Mon810 Corn. Monsanto's results in this action were excellent, as all patents were invalidated and the jury returned a verdict of non-infringement, therefore Monsanto is entitled to be fully compensated. *Hensley*, 461 U.S. at 435. The Court is not inclined to divide the fee based on whether hours were spent in preparation for one legal question or another, rather the entire case surrounded a determination of the validity of Defendants' patents, and such patents were ultimately found to be unenforceable.

Accordingly, this Court concludes that Monsanto should be permitted to recover attorneys' fees in the amount of $8,245,292.35. Although this is a large attorneys' fee award, there is no doubt that the years of litigation which were required in such a complex case, as a result of the inequitable conduct of Bayer, justify such an award.

### b. Expenses

Defendants' fourth, fifth and sixth arguments relate to the inclusion of expenses in an award under 35 U.S.C. § 285. Although certain additional expenses are recoverable under this provision, this Court limited those recoveries in its prior order to $72,827.89, specifically those expenses for research and postage. Defendants assert that any additional amount recoverable should also be limited to those expenses for postage and research costs, or $57,061.32. Plaintiffs assert that the total post appeal expenses total $431,290.30. The Court agrees with the Defendant that those expenses allowed should be limited, as they were in this Court's prior order. Furthermore, as this Court permitted the recovery of all costs above, those costs also requested

17

under 35 U.S.C. § 285, will be deducted. Those expenses permitted will be limited to an additional $57,061.32, for a total of $129,889.29.

## V. CONCLUSION

The Court has carefully considered the Plaintiffs' request for an exceptional case finding and for costs and attorneys' fees. Accordingly, this Court believes that Plaintiffs are entitled to reasonable costs and fees. Plaintiffs are entitled to an award of $138,880.46 in costs as the prevailing party. Plaintiffs are further entitled to $8,375,181.64 in attorneys fees and expenses under 35 U.S.C. § 285. Defendants are ordered to pay a total of $8,514,062.10 to the Plaintiffs. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Monsanto's Motion for Costs [doc. #895] is granted. The Clerk of the Court shall tax costs in favor of Plaintiffs against Defendants in the amount of $138,880.46.

**IT IS FURTHER ORDERED** that Plaintiff Monsanto's Motion for a finding of exceptional case and for an award of attorneys' fees [doc. #898] is **GRANTED**. Defendants are ordered to pay attorneys' fees in the amount of $8,375,181.64.

Dated this 12th Day of April, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE